# In the United States Court of Federal Claims

No. 09-301C
Filed: July 14, 2010
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| MARYLAND ENTERPRISE, L.L.C., | |
| | Contract Disputes Act, 41 U.S.C. § 605; |
| Plaintiff, | Declaratory Judgment Act, 28 U.S.C. § 2201; |
| | Motion for Reconsideration, |
| v. | RCFC 59(a)(1)(B); |
| | RCFC 12(b)(1), 12(b)(6); |
| THE UNITED STATES, | RCFC 60(b)(1), 60 (b)(6); |
| | Tucker Act, 28 U.S.C. § 1491(a)(2). |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Robert Clark MacKichan**, Holland & Knight, LLP, Washington, D.C., Counsel for Plaintiff.

**Matthew H. Solomson**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**MEMORANDUM OPINION AND ORDER DENYING RECONSIDERATION**

**BRADEN,** *Judge*.

On March 24, 2010, Maryland Enterprise, L.L.C. ("Plaintiff") filed a Motion For Relief From [The February 15, 2010 Memorandum Opinion And] Order in *Maryland Enterprise, L.L.C.* v. *United States*, 91 Fed. Cl. 511 (2010), pursuant to Rule 60(b)(1)[1] or Rule 60(b)(6)[2] of

---

[1] RCFC 60(b)(1) provides that:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect[.]

RCFC 60(b)(1).

[2] RCFC 60(b)(6) provides that:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(6) any other reason that justifies relief.

the Rules of the United States Court of Federal Claims ("RCFC").  Pl. Mot. at 1.  RCFC 60(b), however, applies only to a "*final* judgment, order, or proceeding" and no final judgment or order has been entered in this case.  *See Maryland Enterprise*, 91 Fed. Cl. at 530-31; *see also* 12 MOORE'S FEDERAL PRACTICE § 60.03[5] (3d ed. 2004) ("[W]hen litigation involves multiple claims or multiple parties, an order completely disposing of a single claim or a single party is not final.  It may become final only if the court makes an express order, under Rule 54(b), that 'there is no just reasons for delay' and directs entry of a separate final judgment on the resolved portion of the case.  Therefore, a party who contemplates filing a Rule 60(b) motion in litigation that involves multiple claims or multiple parties must consult Rule 54(b) to determine whether the judgment or order from which relief is sought is 'final.'").

Therefore, the court could dismiss Plaintiff's March 24, 2010 Motion on this basis alone.  Instead, the court has decided to consider Plaintiff's request as one for reconsideration under the only other relevant rule, RCFC 59(a)(1)(B).[3]  *See Agredano* v. *United States*, 76 Fed. Cl. 315, 317 (2007) (considering plaintiff's motion under RCFC 59(a)(1) rather than RCFC 60(b), because RCFC 60(b) applies only to final judgments, orders, or proceedings).  For the reasons discussed herein, however, Plaintiff also has failed to satisfy the requirements for this alternative basis for relief.

**I.   THE COURT'S FEBRUARY 15, 2010 MEMORANDUM OPINION AND ORDER.**

To facilitate review of this Memorandum Opinion And Order Denying Reconsideration, a brief discussion of the court's February 15, 2010 Memorandum Opinion And Order is required.

\* \* \*

On March 30, 2005, the General Services Administration ("GSA") awarded Plaintiff Solicitation for Offers No. 9MD0023, a contract for the design, finance, and construction of leased property for the National Oceanic and Atmospheric Administration for Weather and Climate Prediction (the "Project").  *See Maryland Enterprise*, 91 Fed. Cl. at 513.  On September 2, 2005, the parties entered into Lease Agreement No. GS-11B-01583 (the "Lease"), that provided for, among other requirements, a Tenant Improvement Allowance of $10,820,880.  *Id.*

---

RCFC 60(b)(6).

[3] RCFC 59(a)(1) provides that:

The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows:

\* \* \*

(B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court[.]

RCFC 59(a)(1)(B).

2

at 514.  From January 26, 2006 to September 29, 2008, GSA unilaterally issued approximately 50 Change Requests that, according to Plaintiff, imposed approximately $37,000,000 of expenditures over and above the $10,820,880 Tenant Improvement Allowance specified in the Lease.  *Id.* at 515.

On May 12, 2009, Plaintiff filed a Complaint in the United States Court of Federal Claims seeking a declaratory judgment, because the Change Requests exceeded the Tenant Improvement Allowance and thereby constituted a cardinal change to and breach of the Lease.  *Id.* at 516.  On June 29, 2009, Opus East, L.L.C. transferred all ownership interest in Plaintiff to GAMD, L.L.C.  *Id.*  On July 1, 2009, Opus East, L.L.C. filed a Chapter 11 Petition for Bankruptcy in the United States Bankruptcy Court for the District of Delaware.  *Id.*  On July 6, 2009, Bank of America, Plaintiff's lender, moved for the appointment of a Receiver, in the Circuit Court for Prince George's County, Maryland, to protect the bank's secured interest in the Project.  *Id.*  On August 13, 2009, that state court issued an Order ("Receivership Order") that "required Plaintiff to surrender possession and control of the Lease premises and provide the Receiver with possession of all reasonably ascertainable assets relating to the development and construction of the Project."  *Id.* at 516-17 (internal citations omitted).  The Receivership Order will remain in effect until Bank of America's loan to Plaintiff is paid in full or Bank of America and Plaintiff resolve the alleged default at issue and control of the Project is transferred back to Plaintiff.  *Id.* at 517.

On September 11, 2009, the Government filed a Motion To Dismiss the May 12, 2009 Complaint in this case arguing that, under the Receivership Order, Plaintiff does not have standing to pursue this action.  *Id.* at 517-518.

On February 15, 2010, the court issued a Memorandum Opinion And Order: holding that the United States Court of Federal Claims had jurisdiction to adjudicate the claims alleged in the May 12, 2009 Complaint; finding that Plaintiff had standing; and denying the Government's Motion To Dismiss, because the court declined to grant Plaintiff's request for declaratory relief at this juncture.  *Id.* at 529-30.  The court, however, stayed the proceedings for 90 days to allow Plaintiff to request a Final Decision of the Contracting Officer for a sum certain to satisfy the requirements of the Contract Disputes Act, 41 U.S.C. § 605 (2006).  *Maryland Enterprise*, 91 Fed. Cl. at 530-31.

**II.  STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION.**

A motion for reconsideration must be supported "by a showing of extraordinary circumstances which justify relief."  *Fru-Con Constr. Corp.* v. *United States,* 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000).  The decision to grant or deny a motion for reconsideration lies within the discretion of the court.  *See Yuba Natural Res., Inc.* v. *United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (holding that "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court").  A movant cannot prevail by "merely reasserting arguments which were previously made and were carefully considered by the court."  *Henderson County Drainage Dist. No. 3* v. *United States*, 55 Fed. Cl. 334, 337 (2003); *see also Bishop* v. *United States*, 26 Cl. Ct. 281, 286 (1992) (holding that reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court").  To prevail

on a motion for reconsideration, a movant must show that: (1) an intervening change in the controlling law has occurred; (2) new evidence is now available; or (3) the motion is necessary to prevent manifest injustice.  *See Fru-Con Constr. Corp.*, 44 Fed. Cl. at 301.

### III.    DISCUSSION.

#### A.    The Parties' Arguments.

##### 1.    Plaintiff's Argument.

Plaintiff argues that the United States Supreme Court has held that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  Pl. Mot. at 8 (quoting *Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976)).  This obligation extends to the United States Court of Federal Claims' jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(2) (2006).  Pl. Mot. at 9.  Therefore, "[i]f a statutory basis for jurisdiction exists, the [c]ourt is obligated to exercise it."  *Todd Constr., L.P.* v. *United States*, 85 Fed. Cl. 34, 45 (2008); *see also Emery Worldwide Airlines, Inc.* v. *United States*, 47 Fed. Cl. 461, 472 (2000) (rejecting the argument that the court has discretion to decline to exercise its § 1491(a)(2) jurisdiction over nonmonetary CDA claims).  In this case, Plaintiff has satisfied all jurisdictional requirements for the court to adjudicate the May 12, 2009 claims for declaratory relief.

The case law cited in *Maryland Enterprise* does not support the proposition that the United States Court of Federal Claims has the authority to decline to exercise Tucker Act jurisdiction over nonmonetary CDA claims.  Pl. Mot. at 12.  The court's reliance on *Wilton* v. *Seven Falls Co.*, 515 U.S. 277 (1995) is misplaced, because that case involved the authority of federal district courts to decline to entertain declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (2006).  Pl. Mot. at 12.  That Act, however, provides that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201 (emphasis added).  In contrast, the 1992 amendments to the Tucker Act include no language expressing any congressional intent to confer such discretion on the United States Court of Federal Claims.  Pl. Mot. at 13.  Instead, 28 U.S.C. § 1491(a)(2) mandates that the court "shall have jurisdiction."  *Id.*

Accordingly, the United States Court of Appeals for the Federal Circuit has recognized the difference between statutory jurisdiction to adjudicate a case and discretion to issue a remedy.  *See Alliant Techsystems, Inc.* v. *United States*, 178 F.3d 1260, 1270 (Fed. Cir. 1999).  In that case, this federal appellate court observed: "The [G]overnment's argument . . . confuses the question [of] whether the [United States] Court of Federal Claims had jurisdiction to entertain [the] complaint with the question [of] whether the court should grant relief on the merits and what form such relief should take."  *Id.*  Therefore, *Alliant* does not support the proposition that the United States Court of Federal Claims has the authority to decline to exercise jurisdiction over nonmonetary CDA claims.  Pl. Mot. at 14.  Instead, *Alliant* stands only for the proposition that the United States Court of Federal Claims has discretion to issue a declaratory judgment, but that issue does not arise until the remedy stage of the case.  *Id.*

Under the standard of review for a motion to dismiss under RCFC 12(b)(6), the court does not have discretion to determine whether the plaintiff ultimately will prevail on a claim for declaratory relief, but instead is limited to whether the complaint pleads facts sufficient to state a claim upon which declaratory relief could be granted. *Id.* at 15. Therefore, when ruling on a motion to dismiss under RCFC 12(b)(6), the court should not determine whether it will decline to issue declaratory relief. *Id.* For this reason, the court's February 15, 2010 Memorandum Opinion And Order was erroneous. *Id.*

This case involves a fundamental question of contract interpretation regarding Plaintiff's obligation to perform. *Id.* (citing *Alliant*, 178 F.3d at 1271). The May 12, 2009 Complaint alleges sufficient facts to establish that nonmonetary relief is appropriate, because Plaintiff is not obligated to perform the Additional Tenant Improvements. *Id.* at 16. Since a declaratory judgment would resolve the dispute regarding Plaintiff's obligation to perform, "the Complaint states a valid claim upon which declaratory relief may be granted." *Id.*

In addition, the February 15, 2010 Memorandum Opinion And Order "disrupts the jurisdictional equality between the [United States] Court of Federal Claims and the [B]oards of [C]ontract [A]ppeals over CDA nonmonetary claims." *Id.* at 16-17. In *Overall Roofing & Constr., Inc.* v. *United States*, 929 F.2d 687 (Fed. Cir. 1991), it was settled that the United States Court of Federal Claims did not have jurisdiction to hear CDA cases seeking nonmonetary relief regarding the proprietary of a default termination. *Id.* at 690. The 1992 amendments to the Tucker Act, however, restored the jurisdictional parity between the United States Court of Federal Claims and Boards of Contract Appeals in this regard. Pl. Mot. at 16-17 (citing *Todd Constr.*, 85 Fed. Cl. at 40-41).

For these reasons, the court's February 15, 2010 Memorandum Opinion And Order should be reconsidered and the Government's Motion to Dismiss denied on the merits. *Id.* at 18-19.

### 2.     The Government's Response.

The Government responds that Plaintiff presents no grounds for the court to reconsider, much less reverse, a decision declining Plaintiff's request for declaratory relief. Gov't Resp. at 1. The United States Court of Appeals for the Federal Circuit has held that "[t]he discretion to grant declaratory relief" may be exercised by a trial court "only in limited circumstances." *Alliant*, 178 F.3d at 1271. Plaintiff is correct that *Alliant* rejected the Government's argument that the trial court should "fashion a broad, non-jurisdictional bar to judicial consideration of nonmonetary claims raised prior to contract performance." Gov't Resp. at 2 (quoting *Alliant*, 178 F.3d at 1270). The appellate court, however, explained that "[t]his is not to say that the [United States] Court of Federal Claims . . . *is required to issue a declaration of rights* whenever a contractor raises a question of contract interpretation during the course of contract performance." *Id.* at 1271 (emphasis added). Accordingly, "[i]n refusing a request for declaratory relief in the absence of a need for an early declaration of the parties' rights, the court . . . would be applying a principle analogous to the traditional rule that courts will not grant equitable relief when money damages are adequate." *Id.* Further, the appellate court concluded that "[t]he discretion to grant declaratory relief only in limited circumstances allows the

court . . . to restrict the occasions for intervention during contract performance to those involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue." *Id.* In this case, the court followed and relied on this guidance in denying Plaintiff's request for declaratory relief. Gov't Resp. at 3-4 (citing *Maryland Enterprise*, 91 Fed. Cl. at 530-31).

Although the Declaratory Judgment Act is inapplicable to this case, the court's discussion of *Wilton* was meant to convey that declaratory relief is not appropriate "in all instances." *Id.* As for *Alliant*, the plaintiff in that case argued that once it performed the main contract, it had no contractual obligations to the Government. *Id.* In this case, however, the Project is not complete and Plaintiff has not "invoke[d] a special need for early resolution of a legal issue." *Id.* at 4. In fact, the May 12, 2009 Complaint did not allege any facts compelling the need for an early declaratory judgment. *See Alliant*, 178 F.3d at 1271 (holding that the United States Court of Federal Claims may only entertain a request for a declaratory judgment in "limited circumstances," *i.e.*, only where there is "a need for an early declaration of the parties' rights"). Moreover, Plaintiff has failed to explain how a declaratory judgment is required for Plaintiff to continue performance. Gov't Resp. at 5. The declaration that Plaintiff seeks would enable it either to end the Lease and not continue performance, or to perform the change orders and seek an equitable adjustment. *Id.* Plaintiff, however, is not now performing the change orders and, under the Receivership Order, is prohibited from doing so. *Id.* As to the second option, the declaration would allow Plaintiff to avoid performing the change orders. *Id.*

The court reasonably "declined to exercise its <u>discretion</u> to grant declaratory relief," but instead, instructed Plaintiff to submit a claim to the Contracting Officer for a sum certain for the alleged breach of contract and cardinal change claims. *Id.* (emphasis in original). Therefore, the court did not dismiss the May 12, 2009 Complaint under RCFC 12(b)(1), but instead simply declined to exercise the discretion to grant declaratory relief at this juncture. *Id.* at 6-7.

### 3. Plaintiff's Reply.

The Government concedes that Plaintiff has satisfied the "claim" and "final decision" requirements under the CDA. Pl. Reply at 1. Accordingly, if Plaintiff is correct that the court declined to exercise its jurisdiction over the claim for a declaratory judgment, then Plaintiff's Motion For Reconsideration must be granted. *Id.* at 2.

Assuming that the court was exercising its discretion under *Alliant* not to issue declaratory relief, such action was procedurally premature and improper. *Id.* at 4. *Alliant* does not authorize the court to determine whether a contractor ultimately will prevail on a claim for declaratory relief when considering a RCFC 12(b)(1) or 12(b)(6) motion to dismiss. *Id.* Instead, *Alliant* concerned an appeal of a final decision in which "the court addressed the merits of [the contractor's] request for declaratory relief." *Alliant*, 178 F.3d at 1264. Therefore, *Alliant* does not preclude the court's review of a complaint under a RCFC 12(b)(6) motion. Pl. Reply at 4. When doing so, the court's review is limited to "whether the claimant is entitled to offer evidence to support the claims, not whether the claimant will ultimately prevail." *Chapman Law Firm Co.* v. *Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007) (internal citations omitted). The United States Supreme Court has also held that a federal court's review of a

complaint's sufficiency is "necessarily a limited one" and that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt" that the complaint does not state facts in support of the claims that would entitle Plaintiff to relief. Pl. Reply at 4-5 (citing *Scheuer* v. *Rhodes*, 416 U.S. 232, 236 (1974)). *Alliant* did not create an exception to this limited review. *Id.* at 5. Thus, absent a conclusion that Plaintiff failed to state a claim upon which relief can be granted, the court has no discretion to dismiss the Complaint based on its belief that Plaintiff will not ultimately prevail on the merits. *Id.*

Plaintiff emphasizes that this case is about the obligation to perform the Additional Tenant Improvements and not about money. *Id.* The prayer in the Complaint specifically states that Plaintiff "has no obligation under the Lease to proceed with the Additional Tenant Improvements" and does not request money damages. *Id.* at 6. Count Two alleges that "GSA's Additional Tenant Improvements are a cardinal change" that by definition imposes work on the contractor that it has no obligation to perform. *Id.* (citing Compl. ¶¶ 59-62). Therefore, this case centers on whether the Additional Tenant Improvements requested are cardinal changes that must be performed in the first place. *Id.* Like *Alliant*, this case involves a contractor who stopped working on the project after asserting that it had no obligation to proceed. *Id.* at 7. Likewise, Plaintiff also "object[s] to the requirement that it perform at all, not to the requirement that it perform without additional compensation." *Id.* (quoting *Alliant*, 178 F.3d at 1271). Performance under the Lease, whether by Plaintiff or the Receiver, "is at an absolute impasse" until the court resolves the parties' rights with respect to the Additional Tenant Improvements. *Id.* Accordingly, this case is particularly appropriate for declaratory relief, because a live dispute between the parties exists and legal remedies are inadequate to protect Plaintiff's rights under the Lease. *Id.* Therefore, the court must reconsider the February 15, 2010 Memorandum Opinion And Order to allow this matter to proceed with discovery and development of the evidentiary record. *Id.*

### B. The Court's Resolution.

The court's February 15, 2010 Memorandum Opinion And Order declined to issue declaratory relief at this juncture for two reasons: (1) the claims for breach of contract and cardinal change entail determinative questions of fact that cannot be resolved by declaratory judgment; and (2) the trial court has substantial discretion in determining whether the issuance of declaratory relief is appropriate in any particular matter. *See Maryland Enterprise*, 91 Fed. Cl. at 529-30. Plaintiff's March 24, 2010 Motion For Reconsideration and May 6, 2010 Reply, however, do not challenge the court's basis under either of these rationales and fail to satisfy the "extraordinary circumstances required to justify relief" on reconsideration. *Caldwell* v. *United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004).

With respect to the first basis of the court's ruling, "[t]he finding of a cardinal change is principally a question of fact." *Rumsfeld* v. *Freedom NY, Inc.*, 329 F.3d 1320, 1322 (Fed. Cir. 2003). Although a declaratory judgment is not precluded if it involves disputed questions of fact, a declaratory judgment cannot be issued to resolve a disputed question of fact that is a determinative issue. *See Gilbert* v. *Dep't of Justice*, 334 F.3d 1065, 1072 (Fed. Cir. 2003) ("[T]he conduct of the allegedly breaching party – in other words, what the party did or did not do – is an issue of fact. [Only where] the facts are undisputed, the determination of whether

there has been material noncompliance with the terms of a contract, and hence breach, necessarily reduces to a question of law."). As the court's February 15, 2010 Memorandum Opinion And Order held, determinative issues are in dispute, such as whether the Government's issuance of the unilateral change orders constituted a cardinal change. *See Maryland Enterprise*, 91 Fed. Cl. at 530. Accordingly, the court concluded that declaratory relief was not appropriate, a finding Plaintiff has not challenged. *Id.*

As for the second basis of the court's ruling, Plaintiff argues that the court misinterpreted *Alliant* and does not have the authority to decline to exercise Tucker Act jurisdiction to adjudicate nonmonetary disputes under the CDA. Pl. Mot. at 8-15; Pl. Reply at 1-5. Of course, Plaintiff is correct that jurisdiction to adjudicate the claims alleged in the May 12, 2009 Complaint arises under the Tucker Act, 28 U.S.C. § 1491(a)(2), as the court's February 15, 2010 Memorandum Opinion And Order held. *See Maryland Enterprise*, 91 Fed. Cl. at 522-23. But, Plaintiff fails to recognize that the court has discretion to decline to issue declaratory relief at this juncture. Accordingly, in *Alliant*, our appellate court recognized that declaratory relief was appropriate in only limited instances:

> [*T*]*he court . . . is free to consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests.*

*Alliant*, 178 F.3d at 1271 (emphasis added).

The United States Court of Appeals for the Federal Circuit further explained that: "[t]he discretion to grant declaratory relief only in limited circumstances allows the court . . . to restrict the occasions for intervention *during contract performance* to those involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue." *Id.* (emphasis added). In this case, the Project is not complete and contract performance is not ongoing, because additional financing and a schedule for future construction have not been resolved. *See Maryland Enterprise*, 91 Fed. Cl. at 530. In addition, the May 12, 2009 Complaint's prayer for a declaratory judgment does not invoke "a special need for early resolution of a legal issue." *Id.*[4]

The United States Court of Federal Claims also has re-affirmed that it has "the authority to undertake [a declaratory judgment] but [also] the discretion not to do so." *Todd Constr.*, 85 Fed. Cl. at 47. This is not a new construction of the court's jurisdiction or remedial authority. For example, in *CW Gov't Travel, Inc.* v. *United States*, 63 Fed. Cl. 369 (2004), the court

---

[4] The court, however, clarifies that the reference to *Wilton's* description of the "unique and substantial" discretion a trial court has to determine whether to issue declaratory relief in a particular matter was for illustrative purposes, not to suggest that the May 12, 2009 Complaint invoked the Declaratory Judgment Act. *See Maryland Enterprise*, 91 Fed. Cl. at 530 (citing *Wilton*, 515 U.S. at 287). The court also cited *Wilton* for the proposition that a declaratory judgment is a "nonobligatory" remedy, in which the trial court enjoys some discretion in determining whether the circumstances of a particular case warrant such extraordinary relief. *Id.*

concluded that a complaint properly sought review of a CDA claim, but held that "declaratory relief is neither necessary nor appropriate to resolve every case." *Id.* at 387. Likewise, in *Tiger Natural Gas, Inc.* v. *United States*, 61 Fed. Cl. 287 (2004), the United States Court of Federal Claims analyzed jurisdiction separate from whether declaratory relief was appropriate. *Id.* at 293 (holding that statutory authority "'allows the court . . . to restrict the occasions for intervention during contract performance to those involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue'") (quoting *Alliant*, 178 F.3d at 1271).[5]

For these reasons, the court's February 15, 2010 Memorandum Opinion And Order attempted to be faithful to governing precedent in determining that the court had jurisdiction to adjudicate the claims alleged in the May 12, 2009 Complaint, but also in declining to afford declaratory relief at this juncture. *See Maryland Enterprise*, 91 Fed. Cl. at 529-30. Accordingly, the court has determined that Plaintiff has not established any reason in equity to justify reconsideration. *See* RCFC 59(a)(1)(B).

### IV. THE COURT'S RESOLUTION OF PLAINTIFF'S MARCH 24, 2010 MOTION TO TOLL DEADLINE TO FILE MONETARY CLAIM WITH CONTRACTING OFFICER.

On March 24, 2010, Plaintiff also filed a Motion To Toll Deadline To File Monetary Claim With Contracting Officer Pending Resolution Of Plaintiff's Motion For Relief From Order ("Pl. Toll Mot."). Therein, Plaintiff requested that the court suspend the running of the time period for Plaintiff to file a monetary claim with the Contracting Officer, because of required "substantial time, effort, and expense." Pl. Toll Mot. at 2. On March 29, 2010, the Government filed a Response In Opposition ("Gov't Toll Opp."), arguing that the court should not toll the deadline, because Plaintiff's Motion "appears to be calculated to avoid, or substantially delay, the dismissal of [Plaintiff's] case that otherwise currently looms on the horizon." Gov't Toll Opp. at 2.[6]

---

[5] Plaintiff also argues on reconsideration that, under the standard of review under RCFC 12(b)(6), the court does not have the discretion to determine whether ultimately a plaintiff will prevail on a claim for declaratory relief. Pl. Mot. at 15. Plaintiff fails to acknowledge, much less discuss, *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009), wherein the United States Supreme Court re-affirmed the heightened pleading standard in *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007), that to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," *i.e.*, sufficient factual content must be pled from which a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The facts of this case, including that Plaintiff currently is prohibited from performing any Additional Tenant Improvements under the Receivership Order, suggest that the May 12, 2009 Complaint does not meet the plausibility of relief requirement in *Iqbal*.

[6] The Government's April 26, 2010 Response also argues that the court should dismiss Plaintiff's May 12, 2009 Complaint to allow Plaintiff to submit a proper claim to the Contracting Officer. Gov't Mot. at 7 (citing *Sarang Corp.* v. *United States*, 2008 WL 3906867, at *8 (Fed. Cl. Aug. 15, 2008) (dismissing plaintiff's complaint, without prejudice, to afford plaintiff the opportunity to submit a proper claim before the contracting officer)).

      During a May 11, 2010 telephone status conference, Plaintiff's counsel stated that, should the court deny Plaintiff's Motion For Reconsideration, Plaintiff would prefer that the court dismiss the Complaint, without prejudice. 5/11/10 TR at 2:06:52-2:07:51 ("If you decline the relief on the merits [or are] not inclined to declare a declaratory judgment on the merits of the case . . . we would prefer [that the court dismiss the May 12, 2009 Complaint, without prejudice.] It gives the Plaintiff the full time under the statute of limitations to submit a monetary claim instead of a deadline imposed by the court.").

## V.  CONCLUSION.

      For the reasons discussed herein, Plaintiff's March 24, 2010 Motions are denied. If Plaintiff wishes to dismiss the May 12, 2009 Complaint, Plaintiff should file the appropriate notification to the Clerk of the United States Court of Federal Claims.

      **IT IS SO ORDERED**.

      s/ Susan G. Braden
      **SUSAN G. BRADEN**
      **Judge**